**UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **In Re: Katarina Pruitt** | ) | 19 B 19918 |
|  | ) |  |
| Debtor(s) | ) | **Judge David D. Cleary** |
|  | ) |  |

*Notice Of Filing/ Certificate Of Service*

Katarina Pruitt                     David Freydin Ltd.
6322 N. Albany Apt. 3W              Via ECF noticing procedures
Chicago, IL 60659
Via US Mail

Katarina Pruitt
2555 W. Autumn Drive
Round Lake, IL 60073

Please take notice that on February 7, 2022, the attached Trustee's response to Debtor's motion to Modify Plan was filed with the Clerk of the U.S. Bankruptcy Court, a true and correct copy of which is attached.

                                         /s/Yanick Polycarpe
                                         for Marilyn O Marshall, Trustee

I certify under penalty of perjury that I mailed a copy of this notice to the above listed persons by first class US mail, postage prepaid, or as otherwise listed on February 7, 2022.

                                         /s/Yanick Polycarpe
                                         for Marilyn O Marshall, Trustee

Office of the Chapter 13 Trustee
Marilyn O Marshall
224 South Michigan Ave., Suite 800
Chicago, Illinois 60604
312-431-1300

**UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | ) | |
|---|---|---|
| **In Re: Katarina Pruitt** | ) | **19 B 19918** |
| | ) | |
| Debtor(s) | ) | **Judge David D. Cleary** |
| | ) | |

### Reply in Support of Trustee's Motion to Modify Plan

This matter comes before the Court on Trustee's Motion to Modify Plan to increase plan payments and the dividend to general unsecured creditors. Debtor's plan currently calls for plan payments of $350.00 per month, with a 10% dividend to general unsecured creditors. Debtor's schedule E/F reflects $166,341 in general unsecured creditors. A total of $149,201.54 unsecured claims were filed. There are currently 23 months left to complete the plan terms as proposed.

### Background Facts

At the time of filing, debtor stated that her place of residence was 6322 N. Albany Ave., Apt. 3W, Chicago, IL. 60659-1435. See petition docket 1. The means test, filed at docket 2, stated the household size was 5. At the §341 meeting, debtor testified the household was 4 - the debtor, her college age son, and her parents. On September 6, 2019, an amended means test was filed changing the household to 4. Debtor testified she had been in Illinois 8 months. When asked at the §341 meeting the name of her landlord, debtor could not recall. The docket continues to reflect the Albany Avenue address as the debtor's residence.

The plan, as confirmed, requires the debtor to tender tax returns and any tax refund in excess of $1,200.00. Debtor tendered her 2019 tax returns February 24, 2021. The 2019 return, filed as status "married filing separately," claims the debtor's parents as dependents, claims an address of 2555 W. Autumn Drive, Round Lake, IL, claims wage income of $6,704, capital gains of $1,939 and other income of $1,726. The returns are unsigned but the petition preparer dates his signature as March 12, 2020. The 2019 Tax returns, as tendered, are attached as exhibit A. Debtor tendered her 2020 tax return November 1, 2021. The 2020 tax return, as tendered, is attached as exhibit B. The 2020 return was filed with status "married filing jointly," reflect wage income of $147,220, qualified dividends of $3, capital losses of $42, other income of $6253, and

three dependents, a daughter and the debtor's parents. The 2019 and 2020 tax returns, as tendered, are attached as exhibits A and B.

On the original schedule I, debtor claimed $3000.00 per month business income and $2000 per month "support from husband." Based on recording of the §341 meeting of creditors held August 8, 2019, Debtor testified at the §341 meeting of creditors that her husband lived in Florida, gave what he could to support her, had no intention of moving to Illinois, and that she moved to Illinois to assist her parents that had recently immigrated from the Ukraine, which contradicts th assertions in the response. Transcript of said meeting can be made available.

## Response of the Debtor

The Response filed by the debtor January 18, 2022 stands in stark contrast both of the §341 meeting testimony and schedules filed under oath. Paragraph 10 of the Response claims that debtor and her spouse separated shortly after the birth of their daughter in 2017. Paragraph 17 claims that debtor, along with her daughter, mother and father moved to Illinois in late 2018. The Response makes no mention of the son and neither the schedules nor testimony make any mention of a daughter. Debtor's response, paragraph 11, debtor states "at some point in 2018" debtor's husband accepted a new job and moved to Illinois. At the §341 meeting, held August 8, 2019, debtor testified under oath that her husband lived in Florida, worked for a dealership, and had no intention of moving to Illinois.

Debtor's response also states that she and her spouse lived separately in Illinois. This contradicts the representations made on the general warranty deed made April 24, 2019, which states that at the time the debtor and her spouse sold a Cape Coral, Floria property, debtor and her spouse both lived at 6322 N. Albany Avenue, Chicago, Illinois. See attached exhibit C.

Debtor's response claims that in March of 2020, due to the pandemic, debtor agreed to move herself, her daughter and her parents to live with her spouse in Round Lake, Illinois. Debtor's 2019 tax return indicates that when the tax return was prepared March 12, 2020, debtor was already residing in Round Lake, Illinois. Also, debtor's business income remained the same in 2019 and 2020, seemingly not impacted by the pandemic. Debtor claimed only her parents and dependents in 2019. To date, no amended schedules have been filed. Debtor has not made an income or expense disclosures in defense of Trustee's motion to modify plan.

There is no dispute that the debtor currently resides in Round Beach with her spouse. There is no dispute that debtor relies on her spouse's income. There is no dispute that the debtor and her spouse filed joint 2020 tax returns. There is no dispute that 2020 returns show wages, salaries and tips of $147,220 in 2020, and other income in the amount of $6253. It is unclear the source of this other income as no schedules were tendered with the 2020 tax returns. There appears to be no dispute that, at least since early 2020, if not before, debtor has resided with her spouse and the current I, J and address on the docket is inaccurate.

## Discussion

Section 1329 of the Bankruptcy Code governs the post-confirmation amendment of a Chapter 13 plan, which provides in part as allows:

> "(a) at any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon the request of the debtor, the trustee, or the holder of an allowed unsecured claim, to —
>
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan: . . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1322(c) of his title and the requirements of section 1325(a) of the title apply to any modification under subsection (a) of this section"

The controlling case when evaluating a Trustee's motion to modify plan is *Germeraad v. Powers*, 826 F.3d 962 (7th Cir. 2016). In that case, the 7th Circuit emphasized "Chapter 13's policy of requiring debtors to repay creditors to the extent they are able." *Id.* The court went on to state that "the courts have long recognized that a trustee or an unsecured creditor may seek modification when the debtor's financial circumstances change after confirmation and result in the debtor's having the ability to pay more." *Id. at* 974.  When the debtor functions as a family or economic unit with another, "the totality of the family's income and expenses is appropriately considered in calculating both the disposable income of the Debtor for purposes of § 1325(b)(2) as well as the good faith requirement of § 1325(a)(3)." *In re Ortiz-Feliciano*, 532 B.R. 185, 195 (Bankr.D.P.R. 2015) *citing In re McNichols*, 249 B.R. 160(Bankr.N.D.Ill.2000). The requirement

that a plan be proposed in good faith is found in § 1325(a)(3), which is applicable at modification under § 1329(b)(1). The question before the Court is "Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002) (citations omitted).Therefore, the Court should focus on whether the change in the debtor's financial circumstances makes an increase in her plan payments affordable based on the household's financial situation.

As the debtor and her spouse appear to operate as a single economic unit, the non-filing spouse's income should be taken into consideration when determining household income, expense and what is an affordable plan payment to the plan. The income of the non-filing spouse is the primary source funding the families living expenses and debtor's chapter 13 plan. It does not appear that the non-fling spouse is making contributions to the household expenses of the separated spouse as stated in schedule I. Rather, the non-filing spouse is supporting debtor and all the dependents in a single household. The debtor claims, in her Response, that debtor's income was brought to zero shortly after filing the instant case and had net income of $6000 in 2020. There are no supporting documents as to the source of that net income, what debtor's gross income was and what expenses might be, or whether the "other income" on the 2020 tax returns is entirely attributable to the debtor's business.  All we really know is that the household had adjusted gross income of $153,434 in year 2020.  The determination of reasonable and necessary expenses, and untimely what the debtor can afford, should be made within that context.

In the context of debtor's household, the debtor has failed to show a financial inability to repay a higher dividend to general unsecured creditors. Court have held that, in a case where a partner substantially subsidizes the debtor's lifestyle, the partner's income has a substantial effect on the debtor's actual or necessary expenses. The court in *In re Lorenz*, when evaluating whether student loans were subject to discharge due to undue hardship, it was found that the trier of fact is required to consider the income of the non-filing spouse when deciding whether the student loans impose an undue hardship. *In re Lorenz,* 337 B.R. 423 (BAP 1st Cir. 2006.) The BAP clarified that "[a]lthough Renee has no legal obligation to repay the debtor's student loans, he substantially subsidizes Lorenz's lifestyle. His income has a substantial effect on the debtor's actual or necessary expenses, and should have been taken into account in the undue hardship

Case 19-19918    Doc 62    Filed 02/07/22    Entered 02/07/22 17:01:00    Desc Main
Document      Page 6 of 7

determination". *Lorenz,* at 433. The BAP further stated that the debtor and his partner "have so entwined their affairs as to require that Renee's resources be considered if anything approaching a fair picture of Lorenz's circumstances is to be had." *Id.* at fn. 15. In this case, without utilizing the income of the non-filing spouse, there is no income shown available to fund this plan. To gain anything close to a fair picture of the household income and expenses, the income of the non-filing spouse must be added to the equation.

   As of the date of debtor's Response and still today, debtor has not amended schedules I and J to reflect her current household financial situation. The misrepresentations made at the §341 meeting, under oath and under penalty of perjury, were significant. In the Response, debtor states that the spouse moved to Illinois in 2018, while the debtor remained in Florida. At the §341 meeting, under oath, debtor testified her spouse lived in Florida and would not be moving to Illinois. Debtor's amended schedule I, dkt entry 16, still reflects debtor is employed with Art Van furniture, a company that filed bankruptcy and was liquidated in 2020. The current schedule I also has business income of $3,492.61 per month and support from her spouse as $300 per month.

   The response also indicates that the spouse has "continued to support debtor" in the amount of $2000 per month. The $2000 contribution was what initially appeared on the original schedule I filed with the petition, but was amended to $300 per month at docket entry 16, with the debtor representing that was all her spouse could afford to send from Florida. Said spouse was already in Illinois, earning what appears to be well over $100,000 annually. Even if this Court is persuaded by the allegation that debtor has been and continues receiving $2000 per month, Debtor has failed to disclose this fact and failed to commit the funds received to her Chapter 13 plan by misrepresenting that the contribution was only $300. The schedule J reflects $1,350 per month in rent, even though debtor admits in her response that she currently and for some time now, has resided with her spouse. The response states covid caused the debtor, their daughter, and the debtor's parents to move to Round Lake, Illinois. It is unclear when the daughter began living with the debtor and became a dependent. The schedule I, sworn §341 testimony, and pre-petition tax returns all state only debtor's 21 year old son and parents as dependents. Debtor's response also states that a change of address has been filed with the court,

which is not accurate. No change of address has been made. It is unclear whether the parties actually lived apart at the time the instant case was filed, or possibly false representations were made from the start to justify paying only 10% creditors of the estate while disguising the true nature of the household, its income and reasonably necessary expenses.

      The response admits that the schedules have not been accurate for at least two years. The only proof of income before the Court is the 2020 tax return. The evidence shows that the household had adjusted gross income of $153,434 in year 2020. Debtor makes no allegation that the 2021 household income is any less. The income is sufficient to pay allowed, unsecured claims 100%. The increased plan payment is affordable based on the increased income. Debtor's schedules, signed under oath, are inaccurate and misleading. Debtor is required to pay unsecured creditors to the reasonable limits of their ability based upon the totality of the income and expenses. Based upon the actual income reflected on the tax returns, this plan could and should pay a 100% dividend to unsecured creditors.

      Wherefore, for the above stated reasons, movant respectfully requests that Trustee's motion to modify plan be granted and for any other relief this court finds reasonable and just.

    /s/Yanick Polycarpe
    for Marilyn O Marshall, Trustee

Office of the Chapter 13 Trustee
Marilyn O Marshall
224 South Michigan Ave., Suite 800
Chicago, Illinois 60604
312-431-1300